**Michael L. Williams, OSB No. 78426**
mwilliams@wdolaw.com
**Leslie W. O'Leary, OSB No. 99090**
loleary@wdolaw.com
**WILLIAMS LOVE O'LEARY & POWERS, P.C.**
**9755 SW Barnes Road, Suite 450**
**Portland, Oregon 97225-6681**
**Telephone:  (503)295-2924**
**Facsimile :  (503)295-3720**

**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON

| | |
|---|---|
| **TRISH J. BRAZIL,**<br><br>                    Plaintiff,<br><br>              v.<br><br>**BARR LABORATORIES, INC.; BARR PHARMACEUTICALS, INC.; NOVARTIS PHARMACEUTICALS CORPORATION; OREGON HEALTH & SCIENCE UNIVERSITY; and MARTHA GOETSCH, MD**,<br>                                    Defendants. | Case No. 3:10-cv-00431-AC<br><br>**FIRST AMENDED COMPLAINT**<br>Personal Injury Action (28 U.S.C. §1332)<br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

### FIRST CLAIM FOR RELIEF

**(Negligence - Against Drug Company Defendants)**

1.

At all material times, defendants Barr Laboratories, Inc., Barr Pharmaceuticals, Inc. and Novartis Pharmaceuticals Corporation were foreign corporations conducting regular and sustained business activity within Multnomah County, Oregon, as the manufacturers, marketers,

distributors, and sellers of Errin and Vivelle-Dot ("hormone therapy drugs" or "hormone therapy products").

2.

At all material times, defendant Barr Laboratories Inc. prior to December 31, 2003, was a New York corporation with its principal place of business in New York. Effective December 31, 2003, Barr reincorporated from a New York corporation to a Delaware corporation. At all relevant times, this defendant was engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drug Errin.

3.

Defendant Barr Pharmaceuticals, Inc., a Delaware corporation (the "Company") with its principal place of business in New York, was formed in December 2003, in connection with the reincorporation of Barr Laboratories, Inc., a New York corporation ("Barr-NY"). The reincorporation was approved by Barr-NY's Board of Directors and the holders of a majority of Barr-NY's outstanding shares of common stock, voting in person or by proxy, at its Annual Meeting of Shareholders held on October 23, 2003. The reincorporation was accomplished by the merger of Barr-NY into the Company, with the Company as the surviving entity. Prior to the merger, Barr-NY contributed its principal operating assets to Barr Laboratories, Inc., a newly formed, wholly-owned subsidiary incorporated in Delaware. Upon information and belief, the merger of Barr-NY into the Company has made defendant Barr Pharmaceuticals, Inc. responsible for the obligations, debts and liabilities of defendant Barr Laboratories, Inc.

4.

Defendant Novartis Pharmaceuticals Corporation is a Delaware corporation with its principal place of business in East Hanover, New Jersey. At all relevant times, this defendant was engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling,

marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drug Vivelle-Dot.

5.

At all material times, defendant Oregon Health & Science University (OHSU) was an Oregon public corporation and was conducting regular and sustained business activity within Multnomah County Oregon. Defendant Martha Goetsch, MD, was a medical doctor practicing at and employed by OHSU.

6.

On or about 05/19/06 through 12/19/08 Martha Goetsch, MD prescribed the hormone therapy drugs Errin & Vivelle-Dot to plaintiff Trish J. Brazil. As a result of ingesting these hormone therapy drugs, plaintiff Trish J. Brazil developed breast cancer, resulting in personal injuries and damages. Her breast cancer was diagnosed in December 2008, in Oregon.

7.

Despite the exercise of reasonable care and diligence, plaintiff Trish J. Brazil did not discover, and could not have discovered the existence of her claim until within the 180 days preceding the commencement of this action. Commencement of this action is intended to provide notice of this claim as required by ORS 30.275(3)(c).

8.

Each drug company defendant introduced its hormone therapy drugs described herein into the stream of commerce. At all material times, each drug company defendant had a duty to plaintiff and other consumers of its hormone therapy drugs to exercise reasonable care in order to properly design, manufacture, produce, test, study, inspect, mix, label, market, advertise, sell, promote, and distribute its products. This includes a duty to warn of side effects, and to warn of the risks, dangers, and adverse events associated with its hormone therapy drugs.

9.

Each drug company defendant was negligent in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and distribution of its hormone therapy drugs, and breached duties it owed to plaintiff. In particular, each defendant:

a. Failed to withdraw Errin from the market once it was known or knowable that norethindrone (NETH), the progestin used in Errin, greatly increased the risk of breast cancer, while equally effective alternative progestogens, including oral micronized progesterone or vaginal gel containing micronized progesterone, did not.

b. Failed to warn physicians and patients, including plaintiff, that NETH greatly increased breast cancer risk but oral micronized progesterone did not, and that micronized progesterone should be tried first as the progestogen companion to Vivelle-Dot instead of NETH.

c. Failed to conduct adequate pre-clinical testing and research to determine the comparative safety of NETH relative to other available progestogens.

d. Failed to conduct adequate post-marketing surveillance to determine the safety of its hormone therapy drugs, specifically failure to test in women the proliferative effect on breast tissue of NETH compared to progesterone or dydrogesterone, and failed to conduct case control studies on breast cancer patients in regions of the country where the drug company defendants knew many women were being prescribed NETH as the progestogen companion to Vivelle-Dot.

e. Failed to study, develop, and/or acquire safer alternative components to replace the synthetic hormone ingredients in combination hormone therapy;

f. Failed to accompany its product with proper warnings regarding all likely and possible adverse side effects associated with the use of its hormone therapy drug and the comparative severity and duration of these adverse side effects;

g. Failed to use due care in the development of its hormone therapy drug to prevent the aforementioned risks to individuals when the drug was ingested;

h. Failed to use due care to determine that women who suffer new onset of breast tenderness in their first year of use of hormone therapy drugs are at especially high risk of breast cancer thereafter.

i. Failed to use due care in the labeling of its hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

j. Failed to use due care in the marketing of its hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

k. Failed to use due care in the promotion of its hormone therapy drugs to prevent the aforementioned risks to individuals when the drug were ingested;

l. Failed to use due care in the selling of its hormone therapy drugs to prevent the aforementioned risks to individuals when the drug were ingested;

m. Failed to provide adequate information to healthcare providers for the appropriate use of its hormone therapy drugs;

n. Failed to warn adequately about the health consequences, risks, and adverse events caused by its hormone therapy drugs;

  o. Defendant Novartis also agreed in writing, beginning in 2006 and continuing through today, with other global drug companies selling hormone therapy drugs to suppress the scientific evidence showing Prometrium was much safer for the breast than its own pills containing NETA, specifically agreeing not to draw the attention of the European and US regulatory authorities to the largest prospective cohort study of menopausal women using various forms of hormone therapy and breast cancer risk, the French E3N Teachers Study, which beginning in 2005 has consistently reported no increase in breast cancer risk in women using oral micronized progesterone, while confirming the large breast cancer risk in women using imitation progesterones, including NETA, in an effort to keep the "class" labeling about all progestogens being equally suspicious, in order to keep NETA on the market for a few more years.

  p. Was otherwise careless and negligent.

10.

Each drug company defendant knew or should have known that its hormone therapy drugs and their inadequate warnings caused unreasonable harm and dangerous side effects that many users would be unable to remedy by any means.  Despite this, each drug company defendant continued to promote and market its hormone therapy drugs for use by consumers, including plaintiff Trish J. Brazil when much safer and equally effective methods and formulations for treating the negative health effects of menopause were available.

11.

As a result of the negligent conduct of the drug company defendants, plaintiff Trish J. Brazil suffered breast cancer resulting in personal injuries and damages, all of which are permanent.  Furthermore, defendants have caused plaintiff to suffer economic damages in the form of past and future reasonable and necessary medical care and expenses, past and future lost

wages and impaired earnings.  To date, plaintiff's economic damages are in a reasonable amount to be determined by a jury at trial but not expected to exceed two million dollars.

12.

As a further result of the drug company defendants' negligence, plaintiff Trish J. Brazil has also suffered non-economic damages including, but not limited to, past and future pain and suffering, as well as past and future inconvenience and interference with normal and usual activity apart from gainful employment.  To date, plaintiff's non-economic damages are in a reasonable amount to be determined by a jury at trial, but not expected to exceed six million dollars.

## SECOND CLAIM FOR RELIEF

**(Strict Liability – Design Defect Against Drug Company Defendants.)**

13.

Plaintiff realleges all previous paragraphs.

14.

Each drug company defendant manufactured, sold, and supplied its hormone therapy drugs described herein, and at all material times was in the business of doing so.  Each defendant placed its drugs into the stream of commerce.  These drugs were expected to, and did, reach this plaintiff without substantial change in their condition.  Plaintiff ingested these hormone therapy drugs.

15.

At the time the hormone therapy drugs left each defendant's hands, because of their inadequate warning about the risks of breast cancer from norethindrone (NETA) compared to micronized progesterone, these drugs were in a condition not contemplated by plaintiff Trish J. Brazil and were unreasonably dangerous to her.  These hormone therapy drugs were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, including plaintiff.  The drug regimen (estrogen plus an imitation progesterone) each

defendant recommended in fact is so dangerous compared to the alternatives that the drug regimen is too dangerous with any warning to remain on the market.

16.

When each defendant placed its hormone therapy drugs into the stream of commerce, it failed to accompany the drugs with adequate warnings. Each defendant failed to warn of the true risks and dangers, and of the symptoms, scope and severity of the potential side effects of the hormone therapy products plaintiff ingested.

17.

Due to the inadequate warnings as alleged herein, at the time the hormone therapy drugs left each defendant's hands, they were in a condition not contemplated by plaintiff, and were unreasonably dangerous to her. The drugs were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them. They were more dangerous than plaintiff contemplated. Furthermore, their risks outweighed their utility.

18.

Each defendant's hormone drugs described herein were defective and unreasonably dangerous.

19.

Had the defendants provided adequate warnings and instructions, plaintiff would not have ingested these drugs, and would not have suffered the personal injuries she alleges.

20.

The risks of harm from each defendant's hormone therapy drugs outweighed any chance of benefits or utility. There were practicable and feasible safer alternatives to each defendant's hormone therapy drugs for treating menopause symptoms.

21.

Each defendant's hormone drug is defective and unreasonably dangerous.

22.

As a direct and proximate result of each defendant's defective drug products, plaintiff Trish J. Brazil suffered the injuries and damages specified herein.

## THIRD CLAIM FOR RELIEF

**(Professional negligence against the medical provider defendants)**

23.

Plaintiffs reallege all previous paragraphs

24.

Defendants OHSU and Martha Goetsch, MD were negligent in the following ways during their treatment of plaintiff Trish J. Brazil:

    a. In failing to keep up with the medical literature on the relative efficacy and safety of alternatives to NETA as the progestogen companion to Vivelle-Dot;

    b. In failing to advise plaintiff that there was scientific evidence demonstrating that oral micronized progesterone or vaginal gel containing progesterone was much safer with respect to breast cancer than NETA, and that such alternatives were as effective as NETA in preventing the endometrial cancer that Vivelle-Dot could cause when unopposed by a progestogen.

25.

As a result of the medical providers' negligence, Plaintiff Trish J. Brazil developed breast cancer and suffered all of the damages alleged above.

26.

Plaintiff hereby gives notice to defendants of her intention to amend this Complaint to seek punitive damages before trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against the defendants, and each of them, as follows:

1. Plaintiff Trish J. Brazil prays for judgment against each defendant in a reasonable amount to be determined by a jury at trial, but not expected to exceed two million dollars in economic damages for past and future medical expenses; six million dollars in non-economic damages, as well as past and future diminished earning capacity, and for her reasonable costs and disbursement incurred herein, not including the attorney fees they incur in prosecuting this action;

2. Plaintiff prays for such other legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests trial by jury.

DATED: May 14, 2010

By ___/s/Michael L. Williams_____
Michael L. Williams, OSB No. 784260
mwilliams@wdolaw.com
Leslie W. O'Leary, OSB No. 99090
loleary@wdolaw.com

Of Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served electronically via the Court's electronic filing system on the 14 day of May, 2010, according to this Court's provision for service on the following:

Daniel L. Keppler, Esq.
keppler@kwar.com
Ann M. Hoven, Esq.
hoven@kwar.com
Susan E. Watts, Esq.
watts@kwar.com
Kennedy Watts Arellano & Ricks, LLP
1211 SW Fifth Ave., #2850
Portland, OR  97204
(503) 228-6191

Attorneys for the "Barr Defendants"

Nikola L. Jones, Esq.
njones@lindsayhart.com
Michael J. Estok, Esq.
mestok@lindsayharet.com
Lindsay Hart Neil & Wiegler, LLP
1300 SW 5th Ave., #3400
Portland, OR  97201
(503) 226-7677

Attorneys for Oregon Health & Science University Hospital and Martha Goetsch, MD

Douglas G. Houser, Esq.
doug.houser@bullivant.com
Richard J. Whittemore, Esq.
dick.whittemore@bullivant.com
Bullivant Houser Bailey, PC
888 SW Fifth Ave #300
Portland, OR  97204
(503) 228-6351

Attorneys for Novartis Pharmaceuticals Corporation

WILLIAMS LOVE O'LEARY & POWERS, P.C.

/s/  Michael L. Williams
Michael L. Williams, OSB No. 78426
mwilliams@wdolaw.com